FILED

IN THE UNITED STATES DISTRICT COURT 3 PM 2: 17
FOR THE MIDDLE DISTRICT OF FLORIDA
CLERK, US DISTRICT COURT
FORT MYERS DIVISION MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

RONALD L. WRIGHT,
          Plaintiff,

                                            Case No.:

v.

MIKE SCOTT, in his official capacity as
Sheriff of Lee County, Florida; R. PARK, in
his individual capacity; and TWO UNIDENTIFIED
LAW ENFORCEMENT OFFICERS, in their
individual capacities,
          Defendants.

_____/

## COMPLAINT

Plaintiff RONALD L. WRIGHT ("WRIGHT"), by and through undersigned counsel,

hereby sues Defendants MIKE SCOTT ("SCOTT") in his official capacity as Sheriff of Lee

County, R. PARK in his individual capacity, and TWO UNIDENTIFIED LAW

ENFORCEMENT OFFICERS in their individual capacities, and alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages and attorneys' fees arising under 42 U.S.C. §§ 1983 and

1988.

2.    This action alleges a violation of the Constitution of the United States. This violation

includes, but is not limited to, a violation of the Fourth and Fourteenth Amendments

that respectively make unreasonable searches and seizures illegal and apply such

provision to the states, as well as a violation of Equal Protection rights guaranteed

under the Fourteenth Amendment.

1

3. This Honorable Court has original jurisdiction over this action and the parties named herein, pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343.

4. Venue is posited in United States District Court, Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. §1391 and Local Rule 1.02, because the acts, omissions, and practices described hereafter all occurred within Lee County, Florida.

5. WRIGHT seeks an award of compensatory damages, costs and expenses, and reasonable attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

6. At all times material hereto, the acts, omissions, practices, and other conduct of each Defendant were committed under color of state or local law.

7. At all times material hereto, the acts and omissions of R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS were committed while on duty and within the course and scope of their employment as agents for SCOTT, Sheriff of Lee County.

## PARTIES

8. At all times material hereto, WRIGHT was a resident of St. Petersburg, Florida.

9. WRIGHT, also known as "Winky" Wright, is a retired professional boxer. He is the former Undisputed Light Middleweight Champion of the World. His business success is based, in part, on the correct public perception that he is an upstanding member of the community.

10. WRIGHT is a black, African-American male.

11. WRIGHT has retained the services of undersigned counsel and is obligated to pay reasonable attorneys' fees for such services in pursuing the claims asserted herein.

12. At all times material hereto, SCOTT was the elected Sheriff of Lee County, Florida. As Sheriff of Lee County, SCOTT was and is subject to the laws of the State of Florida.

13. SCOTT, through his agents and employees and at all times material hereto, was responsible for the proper and efficient enforcement of the laws and regulations of the State of Florida, in observance of the Constitution of the United States, and the establishment and enforcement of the regulations, policies, practices, and procedures of the Lee County Sheriff's Office.

14. SCOTT is a "person" subject to suit under 42 U.S.C. § 1983 and is being sued in his official capacity as Sheriff of Lee County.

15. R. PARK, whose full first name is unknown as of the filing of this complaint, is a law enforcement officer who, at all times material hereto, was a deputy employed by SCOTT, as Sheriff of Lee County, and by the Lee County Sheriff's Office.

16. R. PARK's badge number with the Lee County Sheriff's Office is 12030.

17. R. PARK is white or light-skinned.

18. R. PARK is a "person" subject to suit under 42 U.S.C. § 1983. He is sued in his individual capacity.

19. The first name of R. PARK will subsequently be identified and captioned as discovery progresses in this litigation.

20. TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS are unidentified officers who, at all times material hereto, were deputies employed by SCOTT, as Sheriff of Lee County, and by the Lee County Sheriff's Office.

3

21. TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS are "persons" subject to suit under 42 U.S.C. § 1983. They are sued in their individual capacities.

22. TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS are white or light-skinned.

23. Each of the TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS drove a separate vehicle or arrived in separate vehicles.

24. One of the UNIDENTIFIED LAW ENFORCEMENT OFFICERS had a police dog with him and appeared to be the handler of the police dog.

25. The names of TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS will subsequently be identified and captioned as discovery progresses in this litigation.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

26. On the morning of June 18, 2015, WRIGHT was one of two black, African-American male passengers in a luxury motor vehicle, a 2014 white Rolls-Royce, being driven by a third black, African-American male, traveling on I-75 Southbound in Lee County, Florida. The occupants of the Rolls-Royce were on their way to play golf.

27. Simultaneously, R. PARK was in a Lee County Sheriff's Office vehicle traveling well under the speed limit on I-75 Southbound in Lee County, Florida.

28. The driver of the Rolls-Royce acknowledged R. PARK by briefly waving at him, and then passed R. PARK's Lee County Sheriff's Office vehicle while driving under the speed limit and complying with all traffic and equipment laws.

29. The road was busy at this time and other vehicles were actively passing the slow-moving Lee County Sheriff's Office vehicle, both immediately before and after the

Rolls-Royce.

30.    The windows of the Rolls-Royce were clear.

31.    R. PARK then sped up and changed lanes to get behind the Rolls-Royce.

32.    At approximately 9:45 a.m., R. PARK pulled the Rolls-Royce over under color of state or local law.

33.    R. PARK came to the window of the Rolls-Royce and asked the driver for his driver's license and registration. The driver immediately identified himself and presented R. PARK with the requested documents.

34.    Without further explanation, R. PARK returned to his Lee County Sheriff's Office vehicle for an extended period of time until two other Lee County Sheriff's Office vehicles arrived at the scene, containing TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS and a police dog.

35.    One of the TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS walked the police dog around the vehicle, performing a "dog sniff." The police dog did not find any illegal substances.

36.    R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS then approached the Rolls-Royce and stated that they were going to search the vehicle.

37.    R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS ordered the occupants of the Rolls-Royce, including WRIGHT, to get out of the vehicle.

38.    The driver of the Rolls-Royce did not knowingly or voluntarily consent to the search of his vehicle or his luggage and personal property inside the vehicle.

39.    The passengers of the Rolls-Royce, including WRIGHT, did not consent to the search

of their luggage and personal property inside the vehicle. WRIGHT explicitly disallowed the searching of his luggage and personal property.

40. However, the occupants of the Rolls-Royce, including WRIGHT, complied with R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS' order to exit the vehicle.

41. The occupants of the Rolls-Royce, including WRIGHT, were forced to wait on the side of I-75 for an extended period of time while R. PARK, TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, and the police dog searched the entire vehicle and its contents, including, but not limited to, all personal items, luggage, golf clubs, trunk, glove box, under the hood, and all other storage areas in the vehicle.

42. The occupants of the Rolls-Royce, including WRIGHT, were in plain view of other motorists while they waited on the side of I-75. At least one passerby recognized WRIGHT during this time.

43. Despite thoroughly searching the vehicle and its contents with the assistance of the police dog, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS did not find any contraband or instrumentalities of illegal activity.

44. At this point, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS released the occupants of the Rolls-Royce, including WRIGHT, to go about their day. R. PARK simply approached the occupants of the Rolls-Royce and said, without more, "You can all go."

45. When all was finished, the occupants of the Rolls-Royce, including WRIGHT, had been detained by R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT

6

OFFICERS for a period of over an hour.

46. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS refused to provide their names or badge numbers and did not leave any documents or paperwork with the occupants of the Rolls-Royce, including the driver.

**COUNT I:**
**VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST SCOTT, IN HIS OFFICIAL CAPACITY, WITH REGARDS TO INITIAL TRAFFIC STOP**

47. WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

48. WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

49. The traffic stop of the Rolls-Royce described herein was an unreasonable seizure of WRIGHT under the Fourth Amendment.

50. R. PARK, acting under color of state or local law by virtue of his employment as law enforcement officer by SCOTT, and under SCOTT's supervision, effectuated an illegal traffic stop of the Rolls-Royce, thereby illegally seizing and detaining WRIGHT and depriving him of his rights under the Fourth Amendment.

51. R. PARK had no reasonable suspicion or probable cause to stop the Rolls-Royce.

52. Upon information and belief and at all times material, R. PARK's stopping, pulling over, and searching of the Rolls Royce as well as his detention of the Rolls Royce's driver and passengers were pretextual. Several other cars passed R. PARK immediately before and after the Rolls-Royce did, but R. PARK chose to stop only the Rolls-Royce, because it was a luxury vehicle occupied by three clearly visible and identifiable black, African-American males.

7

53. Upon information and belief and at all times material, SCOTT condoned and supported the illegal practices of R. PARK, who violated WRIGHT's rights under the Fourth Amendment.

54. Upon information and belief and at all times material, SCOTT had the policy, custom, or practice of allowing his deputies to perform illegal traffic stops without reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

55. Upon information and belief and at all times material, R. PARK was acting pursuant to SCOTT's policies, customs, and practices with respect to conducting traffic stops without reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

56. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of include, but are not limited to, conducting illegal traffic stops of luxury vehicles occupied by black, African-American males without reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

57. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of were the moving force behind the deprivation of WRIGHT's constitutional rights under the Fourth Amendment.

58. As a direct and proximate result of the acts and omissions of SCOTT, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all

of which exist to this day and will continue in the future.

59.   42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a.   Award compensatory damages against Defendant SCOTT;

b.   Award reasonable attorneys' fees and costs against Defendant SCOTT under 42 U.S.C. § 1988; and,

c.   Award such additional or alternative relief as may be just, proper, and equitable.

## COUNT II:
## VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST SCOTT, IN HIS OFFICIAL CAPACITY, WITH REGARDS TO PROLONGING INITIAL TRAFFIC STOP

60.   WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

61.   WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

62.   Even if the initial traffic stop described herein was a reasonable seizure of WRIGHT under the Fourth Amendment, it became unreasonable when prolonged beyond the time necessary to effectuate the purpose of the stop.

63.   R. PARK, acting under color of state or local law by virtue of his employment as a law enforcement officer by SCOTT, and under SCOTT's supervision, illegally prolonged the seizure and detainment of WRIGHT following the initial traffic stop of the Rolls-Royce, thereby depriving WRIGHT of his rights under the Fourth

9

Amendment.

64.   R. PARK had no reasonable suspicion to prolong the seizure and detainment of WRIGHT for investigatory purposes following the initial traffic stop.

65.   R. PARK's detainment of WRIGHT for an unreasonable additional period of time to allow for the arrival of TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS and the police dog was therefore illegal.

66.   Upon information and belief and at all times material, SCOTT condoned and supported the illegal practices of R. PARK, who violated WRIGHT's rights under the Fourth Amendment.

67.   Upon information and belief and at all times material, SCOTT had the policy, custom, or practice of allowing his deputies to illegally prolong traffic stops for investigatory purposes without reasonable suspicion or based on manufactured and pretextual reasonable suspicion.

68.   Upon information and belief and at all times material, R. PARK was acting pursuant to SCOTT's policies, customs, and practices with respect to prolonging traffic stops without reasonable suspicion or based on manufactured and pretextual reasonable suspicion.

69.   Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of include, but are not limited to, illegally prolonging traffic stops of luxury vehicles occupied by black, African-American males for investigatory purposes without reasonable suspicion.

70.   Upon information and belief and at all times material, the *de facto* policies, customs,

and practices complained of were the moving force behind the deprivation of WRIGHT's constitutional rights under the Fourth Amendment.

71.   As a direct and proximate result of the acts and omissions of SCOTT, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

72.   42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a.      Award compensatory damages against Defendant SCOTT;

b.      Award reasonable attorneys' fees and costs against Defendant SCOTT under 42 U.S.C. § 1988; and,

c.      Award such additional or alternative relief as may be just, proper, and equitable.

## COUNT III:
## VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST SCOTT, IN HIS OFFICIAL CAPACITY, WITH REGARDS TO SEARCHING WRIGHT'S LUGGAGE AND PERSONAL BELONGINGS

73.   WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

74.   WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

75.   The warrantless and unauthorized search of WRIGHT's luggage and personal belongings as described herein is an unreasonable search under the Fourth

Amendment.

76. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, acting under color of state or local law by virtue of their employment as law enforcement officers by SCOTT, and under SCOTT's supervision, illegally searched WRIGHT's luggage and personal belongings, which were in the Rolls-Royce, thereby depriving WRIGHT of his rights under the Fourth Amendment.

77. WRIGHT had an expectation of privacy as to the contents of his luggage and personal belongings insomuch as such contents were concealed from plain view.

78. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS had no warrant and no legitimate probable cause to search WRIGHT's luggage and personal belongings, and no reason to believe WRIGHT's luggage and personal belongings contained any contraband or instrumentalities of illegal activity.

79. Upon information and belief and at all times material, SCOTT condoned and supported the illegal practices of R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, who violated WRIGHT's rights under the Fourth Amendment.

80. Upon information and belief and at all times material, SCOTT had the policy, custom, or practice of allowing his deputies to conduct illegal searches without a warrant or probable cause or based on manufactured and pretextual probable cause.

81. Upon information and belief and at all times material, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS were acting pursuant to SCOTT's policies, customs, and practices with respect to conducting illegal searches

without a warrant or probable cause or based on manufactured and pretextual probable cause.

82. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of include, but are not limited to, illegally searching the personal belongings of black, African-American males occupying luxury vehicles without a warrant or probable cause or based on manufactured and pretextual probable cause.

83. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of were the moving force behind the deprivation of WRIGHT's constitutional rights under the Fourth Amendment.

84. As a direct and proximate result of the acts and omissions of SCOTT, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

85. 42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a.    Award compensatory damages against Defendant SCOTT;

b.    Award reasonable attorneys' fees and costs against Defendant SCOTT under 42 U.S.C. § 1988; and,

c.    Award such additional or alternative relief as may be just, proper, and equitable.

13

## COUNT IV:
## VIOLATION OF WRIGHT'S FOURTEENTH AMENDMENT RIGHTS AGAINST SCOTT, IN HIS OFFICIAL CAPACITY, THROUGH RACIAL PROFILING

86. WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

87. WRIGHT has a right to equal protection under the law pursuant to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

88. Race is a protected class under the Equal Protection Clause of the Fourteenth Amendment.

89. WRIGHT and the other two occupants of the Rolls-Royce were black and African-American.

90. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, acting under color of state or local law by virtue of their employment as law enforcement officers by SCOTT, and under SCOTT's supervision, illegally racially profiled WRIGHT and the occupants of the Rolls-Royce, depriving WRIGHT of his right to equal protection under the Fourteenth Amendment.

91. This illegal racial profiling led to WRIGHT being illegally detained, having his detention illegally prolonged for investigatory purposes, and having his personal property illegally searched.

92. R. PARK initially detained WRIGHT and the occupants of the Rolls-Royce as a result of racial profiling. Several other cars legally passed R. PARK immediately before and after the Rolls-Royce, but R. PARK chose to stop the Rolls-Royce, a luxury vehicle occupied by three clearly visible and identifiable black, African-

American males.

93. Upon information and belief and at all times material, SCOTT condoned and supported the illegal practices of R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, who violated WRIGHT's rights under the Fourteenth Amendment.

94. Upon information and belief and at all times material, SCOTT had the policy, custom, or practice of allowing his deputies to racially profile citizens and intervene with citizens on the basis of their race, regardless of reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

95. Upon information and belief and at all times material, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS were acting pursuant to SCOTT's policies, customs, and practices with respect to intervening with citizens on the basis of their race, regardless of reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

96. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of include, but are not limited to, illegally intervening with black, African-American males occupying luxury vehicles, regardless of reasonable suspicion or probable cause or based on manufactured and pretextual reasonable suspicion or probable cause.

97. Upon information and belief and at all times material, the *de facto* policies, customs, and practices complained of were the moving force behind the deprivation of

15

WRIGHT's constitutional rights under the Fourteenth Amendment.

98. As a direct and proximate result of the acts and omissions of SCOTT, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

99. 42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourteenth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a. Award compensatory damages against Defendant SCOTT;

b. Award reasonable attorneys' fees and costs against Defendant SCOTT under 42 U.S.C. § 1988; and,

c. Award such additional or alternative relief as may be just, proper, and equitable.

<u>COUNT V:</u>
**<u>VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST R. PARK, IN HIS INDIVIDUAL CAPACITY, WITH REGARDS TO INITIAL TRAFFIC STOP</u>**

100. WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

101. WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

102. The traffic stop of the Rolls-Royce described herein was an unreasonable seizure of WRIGHT under the Fourth Amendment.

103. R. PARK, acting under color of state or local law by virtue of his status as a Lee County police officer, effectuated the illegal traffic stop of the Rolls-Royce, thereby

illegally seizing and detaining WRIGHT and depriving him of his rights under the Fourth Amendment.

104. R. PARK had no reasonable suspicion or probable cause to stop the Rolls-Royce.

105. R. PARK chose to stop the Rolls-Royce, a luxury vehicle occupied by three clearly visible and identifiable black, African-American males.

106. Upon information and belief and at all times material, R. PARK stopped the Rolls-Royce without reasonable suspicion or probable cause precisely because its occupants were black, African-American males, and not for any legitimate law enforcement purpose.

107. As a direct and proximate result of the acts and omissions of R. PARK, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

108. 42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

WHEREFORE, Plaintiff WRIGHT respectfully requests that this Court:

a.    Award compensatory damages against Defendant R. PARK;

b.    Award punitive damages against Defendant R. PARK;

c.    Award reasonable attorneys' fees and costs against Defendant R. PARK under 42 U.S.C. § 1988; and,

d.    Award such additional or alternative relief as may be just, proper, and equitable.

17

## COUNT VI:
## VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST R. PARK, IN HIS INDIVIDUAL CAPACITY, WITH REGARDS TO PROLONGING INITIAL TRAFFIC STOP

109.    WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

110.    WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

111.    Even if the initial traffic stop described herein was a reasonable seizure of WRIGHT under the Fourth Amendment, it became unreasonable when it was prolonged beyond the time necessary to effectuate the purpose of the stop.

112.    R. PARK, acting under color of state or local law by virtue of his employment as a law enforcement officer by SCOTT, and under SCOTT's supervision, illegally prolonged the seizure and detainment of WRIGHT following the initial traffic stop of the Rolls-Royce, thereby depriving WRIGHT of his rights under the Fourth Amendment.

113.    R. PARK had no reasonable suspicion to prolong the seizure and detainment of WRIGHT for investigatory purposes following the initial traffic stop.

114.    R. PARK's detainment of WRIGHT for an additional unreasonable amount of time to allow for the arrival of TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS and the police dog was therefore illegal.

115.    Upon information and belief and at all times material, R. PARK prolonged the traffic stop without reasonable suspicion because the occupants of the Rolls-Royce were black, African-American males, and not for any legitimate law enforcement purpose.

18

116. As a direct and proximate result of the acts and omissions of R. PARK, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

117. 42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a. Award compensatory damages against Defendant R. PARK;

b. Award punitive damages against Defendant R. PARK;

c. Award reasonable attorneys' fees and costs against Defendant R. PARK under 42 U.S.C. § 1988; and,

d. Award such additional or alternative relief as may be just, proper, and equitable.

<u>COUNT VII:</u>
**<u>VIOLATION OF WRIGHT'S FOURTH AMENDMENT RIGHT AGAINST TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS AND R. PARK, IN THEIR INDIVIDUAL CAPACITIES, WITH REGARDS TO SEARCHING WRIGHT'S LUGGAGE AND PERSONAL BELONGINGS</u>**

118. WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

119. WRIGHT has a right to be secure against unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.

120. The warrantless and unauthorized searching of WRIGHT's luggage and personal belongings as described herein is an unreasonable search under the Fourth Amendment.

121. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, acting under color of state or local law by virtue of their employment as Lee County police officers, illegally searched WRIGHT's luggage and personal belongings, which were in the Rolls-Royce, thereby depriving WRIGHT of his rights under the Fourth Amendment.

122. WRIGHT had an expectation of privacy as to the contents of his luggage and personal belongings insomuch as such contents were concealed from plain view.

123. R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS had no warrant and no legitimate probable cause to search WRIGHT's luggage and personal belongings, and no reason to believe WRIGHT's luggage and personal belongings contained any contraband or instrumentalities of illegal activity.

124. No illegal drugs or any contraband or instrumentalities of illegal activity were actually found in the Rolls-Royce or its contents, including WRIGHT's personal belongings and luggage.

125. Upon information and belief and at all times material, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS searched the Rolls-Royce and its contents, including WRIGHT's luggage and personal belongings, without a warrant or legitimate probable cause because the occupants of the Rolls-Royce were black, African-American males, and not for any legitimate law enforcement purpose.

126. As a direct and proximate result of the acts and omissions of R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation,

shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

127.    42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a.    Award compensatory damages against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS;

b.    Award punitive damages against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS;

c.    Award reasonable attorneys' fees and costs against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS under 42 U.S.C. § 1988; and,

d.    Award such additional or alternative relief as may be just, proper, and equitable.

## COUNT VIII:
## VIOLATION OF WRIGHT'S FOURTEENTH AMENDMENT RIGHTS AGAINST R. PARK AND TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, IN THEIR INDIVIDUAL CAPACITIES, THROUGH RACIAL PROFILING

128.    WRIGHT re-alleges paragraphs 1-46 as if fully set forth herein.

129.    WRIGHT has a right to equal protection under the law pursuant to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

130.    Race is a protected class under the Equal Protection Clause of the Fourteenth

Amendment.

131. WRIGHT and the other two occupants of the Rolls-Royce were all black and African-American.

132. Upon information and belief and at all times material, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, acting under color of state or local law by virtue of their employment as law enforcement officers, illegally racially profiled WRIGHT and the occupants of the Rolls-Royce, depriving WRIGHT of his right to equal protection under the Fourteenth Amendment.

133. This illegal racial profiling led to WRIGHT being illegally detained, having his detention illegally prolonged for investigatory purposes, and having his personal property illegally searched.

134. Upon information and belief and at all times material, R. PARK chose to illegally and unreasonably detain WRIGHT and the occupants of the Rolls-Royce as a result of racial profiling. Several other cars legally passed R. PARK immediately before and after the Rolls-Royce, but R. PARK only chose to stop the Rolls-Royce, a luxury vehicle occupied by three clearly visible and identifiable black, African-American males.

135. Upon information and belief and at all times material, R. PARK chose to illegally and unreasonably extend the initial traffic stop of WRIGHT and the occupants of the Rolls-Royce as a result of racial profiling. This improper prolongation of the traffic stop allowed TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS and the police dog to arrive at the scene of the stop.

136.   Upon information and belief and at all times material, R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS chose to illegally and unreasonably search the Rolls-Royce and its contents, including WRIGHT's luggage and personal belongings, as a result of racial profiling. R. PARK and the TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS did not find any illegal drugs, contraband, or instrumentalities of illegal activity as a result of their search.

137.   As a direct and proximate result of the acts and omissions of R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS, WRIGHT suffered damages including past, present, and future emotional distress, embarrassment, humiliation, shame, and damage to his good name and reputation, all of which exist to this day and will continue in the future.

138.   42 U.S.C. § 1983 provides a remedy for the deprivation of WRIGHT's rights under the Fourteenth Amendment.

**WHEREFORE,** Plaintiff WRIGHT respectfully requests that this Court:

a.   Award compensatory damages against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS;

b.   Award punitive damages against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS;

c.   Award reasonable attorneys' fees and costs against Defendants R. PARK and TWO UNIDENTIFIED LAW ENFORCEMENT OFFICERS under 42 U.S.C. § 1988; and,

d.   Award such additional or alternative relief as may be just, proper, and

23

equitable.

## REQUEST FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff WRIGHT requests a jury trial on all issues

so triable.

DATED this **2nd** day of **March** , 2017.

Bennie Lazzara, Jr.
Florida Bar No. 119568

Joseph H. Ficarrotta
Florida Bar No. 0155739

WILKES & McHUGH, P.A.
One North Dale Mabry, Suite 800
Tampa, Florida 33609
Tel. (813) 873-0026
Fax (813) 286-8820
Bennie@wilkesmchugh.com
JFicarrotta@wilkesmchugh.com
FL@wilkesmchugh.com
Attorneys for Plaintiff